IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LARRY KLAYMAN

                Plaintiff,

v.

HON. ANNA BLACKBURNE-RIGSBY, et al

                Defendants.

**CASE NO: 21-cv-409**

**PLAINTIFF LARRY KLAYMAN'S RESPONSE TO ORDER TO SHOW CAUSE**

Plaintiff Larry Klayman ("Mr. Klayman") hereby responds to the Court's *sup sponte* Order to Show Cause of February 24, 2021 ordering Mr. Klayman to "show cause…why the claims against the twelve defendant judges of the DC Court of Appeals should not be dismissed pursuant to Rule 12(h)(3) on the grounds of judicial immunity.[1]"

**I.**     **INTRODUCTION AND STATEMENT OF RELEVANT FACTS**

This case centers around the actions of Defendants in violating Mr. Klayman's constitutional and other legal rights in a  matter styled *In re: Klayman*, 20-BG-583. (the "Disciplinary Proceeding"). Mr. Klayman has submitted a sworn affidavit which incorporates the initial brief and its appendix that he submitted in this Disciplinary Proceeding, which he swears under oath is accurate. ECF No. 2-1.

---

[1] Thus far, Judges Beckwith, Deahl, Easterly, Fisher, Nebeker, Ruiz, Steadman have been served with the Complaint, with Defendant Julio Castillo and Judges Washington, Ferren, Thompson, McLeese, Glickman, and Blackburne Rigsby outstanding. The process server had advised that some of the Defendants in this matter appear to have been evading service of process, but now the process server informs that they will accept service of process by email. The affidavits of service of those Defendants who have thus far been served are being filed at this time.

From the very outset of this proceeding coming before the District of Columbia Court of Appeals ("DCCA"), it more than appears that the Defendants had prejudged this matter, which has severely prejudiced and harmed not just Mr. Klayman but also his clients. Comp. ¶ 21. This prejudgment is manifested by *prima facie* violations of many of Mr. Klayman's constitutional rights, including equal protection, due process, First Amendment, and Sixth Amendment right to counsel of choice during the temporary suspension phase of this proceeding. Comp. ¶ 22.

On October 19, 2020 the DCCA, comprised of each and every Defendant, *sua sponte* issued an order to show cause as to why Mr. Klayman should not serve an interim suspension while this matter was being decided, which could take a considerable amount of additional time if a complete and thorough review of the record should ever take place, which it must, as the record in this now eleven year old case is substantial and deep. Comp. ¶ 23. Thus, temporary interim discipline, particularly under these egregious and extraordinary circumstances, runs counter to perhaps the most fundamental and basic tenet of our judicial system – that an individual is to be provided due process and equal protection under the law, and thus presumed innocent until proven guilty.  However, to the contrary, the  Defendants herein have flipped fundamental constitutional rights on their head, finding Mr. Klayman guilty until he can prove himself innocent.  Comp. ¶ 24. This has harmed and damage his legal practice and the important interests of his clients.

Thus, Mr. Klayman filed an extremely detailed response, with backup citations, with verifiable substantial evidence to the order to show cause, as well as a supplement, both of which showed why interim discipline was not warranted. Comp. ¶ 25.

However, Defendants effectively ignored Mr. Klayman's submissions and chose instead to impose an interim suspension on January 7, 2021, while providing absolutely no factual or

legal analysis much more findings of fact and conclusions of law as to how they came to this decision. This prevents Mr. Klayman from effectively challenging this order during the final phase of this appeal, as he has no idea why the Court chose to impose interim discipline, and thus evidences a total lack of due process among other constitutional violations as pled herein. Comp. ¶ 26. Indeed, for this fundamental reason, Mr. Klayman filed on January 11, 2021 an "Emergency Motion to Vacate Order and Issue Ruing with Factual and Legal Analysis with Established and Mandated Judicial Practice Based on Due Process and Other Constitutional Rights," but this was again summarily denied without any factual or legal analysis much more findings of fact and conclusions of law as well. Comp. ¶ 27.

An order temporarily suspending Mr. Klayman is akin to a preliminary injunction, which means that Mr. Klayman should have been entitled to factual findings and conclusions of law so that he knows what he needs to address in his later opening brief and reply during the case in chief. Egregiously, without due process have been provided to him, Mr. Klayman is now suspended before the courts of the District of Columbia, which constitutes and on-going serious harm to him and his clients. *As set forth by compelling analogy in* District of Columbia Rule of Civil Procedure 52 (a)(1):

> Unless expressly waived by all parties, in an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately. The findings and conclusions may be stated on the record or may appear in an opinion or a memorandum of decision filed by the court and are sufficient if they state the controlling factual and legal grounds of decision. Comp. ¶ 28.

Part (a)(2) of this Rule with regard to analogous interlocutory injunctions mandates "In granting or refusing an interlocutory injunction, the court must similarly state the findings and conclusions that support its action. Similarly, the Federal Rules of Civil Procedure are

substantively the same as the District of Columbia Rules of Civil Procedure See Fed. R. Civ. P. 52(a)(1) – (2):

> (1) In General. In an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately. The findings and conclusions may be stated on the record after the close of the evidence or may appear in an opinion or a memorandum of decision filed by the court. Judgment must be entered under Rule 58.
> (2) For an Interlocutory Injunction. In granting or refusing an interlocutory injunction, the court must similarly state the findings and conclusions that support its action.

Mr. Klayman then attempted to file, pursuant to DCCA Rule 35, a Petition for Rehearing En Banc. However, Mr. Klayman was not even permitted to file this Petition, as it was rejected   by the chief judge, this three judge panel and all of the judges of the DCCA  on January 25, 2021 as "invalid material" on the basis that the January 7, 2021 order was an interim suspension pending final disposition. Comp. ¶ 29.  However, nothing in DCCA Rule 35 prohibits or precludes in any way the filing of a Petition for Rehearing En Banc to challenge an interim order, particularly one that immediately suspends Mr. Klayman from the practice of law before District of Columbia courts. *See* DCCA Rule 35:

> (a) When Hearing or Rehearing En Banc May Be Ordered. A majority of the judges who are in regular active service may order that an appeal or other proceeding be heard or reheard en banc. An en banc hearing or rehearing is not favored and ordinarily will not be ordered unless: (1) en banc consideration is necessary to secure or maintain uniformity of the court's decisions; or  (2) the proceeding involves a question of exceptional importance. Comp. ¶ 30.

As a result, Respondent Larry Klayman's "Resubmitted Emergency Petition for Rehearing En Banc to Vacate Three Judge Panel Per Curiam Order of January 7, 2021 and Reissue Order with Factual and Legal Analysis in Accordance with Established and Mandated Judicial Practice Based on Due Process and Other Constitutional Rights" was refiled to show and assert anew that Rule 35 did not prohibit en banc review, but even given the exceptional

importance of the petition given the on-going harm to Mr. Klayman and his clients, it was summarily rejected again. Comp. ¶ 31. The clerk of the court, who rejected Mr. Klayman's filings, acted at the direction of Defendants as their agent and therefore is also liable for denying Mr. Klayman his constitutional and other legal rights , as the clerk's actions were contrary to and in violation of Rule 35 of the DCCA. And, finally, on February 9, 2021, Mr. Klayman filed an Emergency Motion of Respondent Larry Klayman to Rescind Temporary Suspension Order of January 7, 2021, but Defendants have refused to act, further evidencing that he has no adequate remedy at law by any vehicle of judicial review in the DCCA. Comp. ¶ 37

Once again, there can be no other explanation other than Defendants were simply looking for a reason to continue to deny Mr. Klayman his due process, equal protection rights and other constitutional rights as pled herein, by, among other grounds, not providing him with any justification for their actions in temporarily suspending him for what is an indefinite period, much less the required factual findings and conclusions of law from which he could logically base his arguments against any discipline during this final phase of the proceeding.

Because each and every member of the DCCA refused to even consider Mr. Klayman's Petition for Rehearing En Banc, and indeed would not even allow its filing, each and every Defendant has committed, or condoned or ratified the constitutionally based violations herein. Comp. ¶ 33.

To make matters even worse, Mr. Klayman has, until recently, been egregiously and unconscionably denied his constitutional right to counsel under the Sixth Amendment during period leading up to and even after the temporary suspension. From the very outset of this case in the DCCA, Mr. Klayman made it very clear that he wished to be represented by Melissa Isaak, Esq. pro hac vice. In this regard, Ms. Isaak first filed an application for pro hac vice admission

on November 11, 2020 and it was not until January 21, 2021 that the Court finally directed the clerk to enter Ms. Isaak's appearance. *See* Order of January 21, 2021 directing Clerk to enter the appearance of Melissa Isaak, Esq. This is an egregious and unconscionable over three-month delay, that is over nine (9) weeks, during which time Mr. Klayman was denied his right to counsel of choice, incredibly  until after the Defendants had already imposed an interim suspension on him in a fatally flawed proceeding where he was denied counsel. Comp. ¶ 34.

Lastly, Mr. Klayman has informed the Defendants on numerous occasions that he was not being served timely with orders from the DCCA, which has caused him and thus his clients prejudice. As set forth in his Motion for Extension of Time of January 3, 2021, he did not learn of the briefing schedule order until sixteen (16) days after it had been issued. This is significant as he lost time to prepare for such a voluminous brief. Tellingly,  Defendants have even refused to address this simple matter, which could have been easily rectified. Comp. ¶ 35.

All of this leads to the obvious conclusion that the Defendants have not only violated sacrosanct constitutional rights but in so doing prejudged the issues, notwithstanding the underlying facts of this disciplinary matter which are set forth not just in the Complaint, but also Plaintiff's Motion for Preliminary Injunction, under oath. This total unconstitutional breakdown of the disciplinary process requires this Court to remedy this clear wrong, as Mr. Klayman has exhausted all legal avenues before the Defendants, and there is no ability to be heard on appeal. Mr. Klayman thus respectfully requests that the Court order that the temporary suspension be immediately lifted and also order that Defendants thoroughly review the record to prevent a further and at this point compounded violations of constitutional rights and a concomitant miscarriage of justice. Comp. ¶ 36.

Thus, Mr. Klayman's constitutional rights were grossly violated by Defendants. His due

process rights under the Fourteenth Amendment were violated when he was presumed guilty before his disciplinary proceeding even began and temporarily suspended for an indefinite period. To compound matters, Defendants have steadfastly refused to provide him with any type of explanation or reasoning as to why they have suspended Mr. Klayman, leaving him without any means to defend himself. Defendants have further refused to vacate their unconstitutional suspension order, and have gone so far as to deny Mr. Klayman the right to even simply <u>file</u> a petition for rehearing en banc. Mr. Klayman's First Amendment rights have also been violated, as Defendants have, by taking away his ability to practice law, silenced him as a public interest advocate, litigator and private legal practitioner, harming not just the public interest but private clients in this flawed process. Mr. Klayman's Fourteenth equal protection rights have also been violated as a Jewish Caucasian white male, in discriminatory favor of a Muslim woman of color who had been thoroughly impeached as set forth in the pleadings and by her own admissions on the record, and whose credibility was nil – in addition and as opposed  to Mr. Klayman's seven material witnesses who all proved that there was no clear and convincing evidence of a violation of the District of Columbia Rules of Professional Conduct.  To add to these considerable constitutional violations resulting in on-going injury to his legal practice and thus his clients, Mr. Klayman's  Sixth Amendment right to counsel was also violated, as he was left without his counsel of choice, Ms. Melissa Isaak, to defend him during the temporary disciplinary phase of the Disciplinary Proceeding.

In sum, regrettably Mr. Klayman has been left with  no legal recourse but to file this action. He has asked for remedial relief through numerous pleadings, including his Emergency Motion to Vacate, Petitions for Rehearing En Banc, and Emergency Motion to Rescind, as set forth above and as reflected on the DCCA's docket sheet, <u>Exhibit 3</u>, and has had his motions

summarily denied without explanation and even been deprived the right to even file a petition for rehearing en banc and thus have it considered.  It is clear that Mr. Klayman simply has no adequate remedy at law except for this instant Complaint for injunctive relief.

## II.   LEGAL ANALYSIS

### A.   Judicial Immunity Does Not Preclude a Lawsuit for Injunctive Relief

Mr. Klayman's action only seeks injunctive and declaratory relief against Defendants, not monetary damages. Thus, based on well-settled and established case law, judicial immunity does not preclude his case.

In the landmark case of *Pulliam v. Allen*, 466 U.S. 522 (1984), the United States Supreme Court expressly held that "[w]e conclude that judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity." *Id*. at 541-42.  In *Pulliam*, the Petition, Gladys Pulliam was a Magistrate judge. She had a practice of imposing bail on persons arrested for non-jailable offenses and then incarcerating those persons if they could not meet bail. *Id*. at 524. Respondents challenged this practice under 42 U.S.C. § 1983. The District Court  found that this was a violation of due process and equal protection and enjoined Pulliam. *Id*. at 526. The Supreme Court affirmed. In doing so, it provided sound reasoning that resonates and applies to this day:

> If the Court were to employ principles of judicial immunity to enhance further the limitations already imposed by principles of comity and federalism on the availability of injunctive relief against a state judge, it would foreclose relief in situations where,  in the opinion of a federal judge, that relief is constitutionally required and necessary to prevent irreparable harm. Absent some basis for determining that such a result is compelled, either by the principles of judicial immunity, derived from the common law and not explicitly abrogated by Congress, or by Congress' own intent to limit  the relief available under § 1983, we are unwilling to impose those limits ourselves on the remedy Congress provided. *Id*. at 539-40.

> We remain steadfast in our conclusion, nevertheless, that Congress intended §

1983 to be an independent protection for federal rights and find nothing to suggest
that Congress intended to expand the common-law doctrine of judicial immunity
to insulate state judges completely from federal collateral review. *Id.* at 541.

This Supreme Court precedent has been followed and adhered to by the U.S. Court of Appeals

for the District of Columbia Circuit in *Wagshal v. Foster*, 307 U.S. App. D.C. 382, 28 F.3d 1249,

1251 (1994) (finding that the Appellant's claim for injunctive relief was not barred by judicial

immunity). As recently as 2014, the Honorable Ketanji Brown Jackson ("Judge Jackson") of this

Court cited both *Pulliam* and *Wagshal* in finding that "The Supreme Court has held that 'judicial

immunity is not a bar to prospective [injunctive] relief against a judicial officer acting in her

judicial capacity…" *Smith v. Scalia*, 44 F. Supp. 3d 28, 43 (D.D.C. 2014).[2]

Thus, under the firm and convincing  precedent set by *Pulliam*, *Wagshal*, and  *Smith*, the

Court must find that Mr. Klayman's claims here for injunctive relief are also not barred by

judicial immunity.

There have been numerous law review articles and other authority on judicial immunity

---

[2] Mr. Klayman directs the Court's attention to analogous legal authority that shows that there is
simply no "absolute immunity," whether judicial or otherwise,  when government officials or
judges violate an individual's constitutional rights.

In *Trulock v. Freeh*, 275 F.3d 391 (4th Cir. 2001), a landmark case that Plaintiff served as
counsel, filed, and argued before the U.S. Court of Appeals for the Fourth Circuit, plaintiffs, an
ex-intelligence official in the Department of Energy and his assistant, sought review of an order
of the U.S. District Court for the Eastern District of Virginia, which dismissed their action
against defendants, FBI Director Louis Freeh, his agents, and his supervisors, alleging an
unconstitutional seizure and search of their home and computer in retaliation for the official's
published criticism of the FBI. *Id.* at 397-98. The U.S. Court of Appeals for the Fourth Circuit
held that plaintiffs First Amendment claim could proceed and that the officials, including FBI
Director Freeh, were not entitled to qualified immunity because "a public official may not
misuse his power to retaliate against an individual for the exercise of a valid constitutional right.
*Id.* at 405. Additionally, the court ordered the case to proceed to discovery. *Id.*

Furthermore, the Honorable Ellen Segal Huvelle of this Court has allowed for a First
Amendment retaliation *Bivens* claim to proceed past the motion to dismiss stage in *Navab-Safavi
v. Broadcasting Board of Governors*, 08-cv-1125 (D.D.C.).

These cases show that there is no absolute immunity for judges or government officials
for violating an individual's constitutional rights.

which have discussed and confirmed this fundamental principle. *See Absolute Judicial Immunity Makes Absolute No Sense: An Argument for an Exception to Judicial Immunity*, 84 Temp. L. Rev. 1071. Exhibit 1; *see also Note: Pulliam v. Allen: Harmonizing Judicial Accountability for Civil Rights Abuses with Judicial Immunity* 34 Am. U. L. Rev. 523. Exhibit 2.

> Judicial immunity, unlike other forms of official immunity in the United States, is almost entirely a creation of the men and women it immunizes….Such analysis shows that the wall of judicial immunity, which uses its purposes as mortar, is not without cracks and under certain pressures should crumble. Exhibit 1.

> In Pulliam v. Allen, the Court considered whether judicial immunity bars injunctive and declaratory relief, as well as legal fees associated with gaining that relief. In Pulliam, a county magistrate judge allegedly incarcerated persons for "nonjailable offenses….Similarly, American courts "never have had a rule of absolute judicial immunity from prospective relief." The Court noted that the concerns with granting injunctive relief against a judge were distinct from those alleviated by protecting judges from damages. Further, the Court noted that the hurdles for obtaining equitable relief are sufficiently high to guard against harassment of judges and the chance of compromising judicial independence is lower in the case of injunctions. Exhibit 1.

> In Pulliam v. Allen the Supreme Court took a major step in removing one of the last vestiges of sovereign immunity for members of the judiciary. In Pulliam the Court upheld the award of injunctive and declaratory relief under section 1983 and attorney's fees under section 1988 against a state magistrate who, although acting within a magistrate's proper jurisdiction, had violated a litigant's civil rights. Pulliam was the first Supreme Court case to reject judicial immunity by holding a judge civilly accountable for her conduct. Exhibit 2.

### 1.    The Federal Courts Improvement Act of 1996 Does Not Preclude Mr. Klayman's Claims for Injunctive Relief

The Federal Courts Improvement Act of 1996 ("FCIA") amended 42 U.S.C. § 1983 to provide that "in any action brought against a judicial officer for an act of omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." The FCIA has not superseded *Pulliam*,  as evidenced by Judge Jackson's 2014 decision in *Smith*.

Moreover, it is clear that declaratory relief is unavailable to Mr. Klayman, and therefore

he has valid causes of action for injunctive relief. Mr. Klayman's requests for rehearing and then en banc was his only chance at declaratory relief, and the Defendants refused to even allow him to file a petition for rehearing en banc. All doors were therefore shut and Mr. Klayman simply had no other remedy at law but to file this Complaint for injunctive relief.

Indeed, the Complaint expressly pleads and shows how Mr. Klayman has no adequate remedy at law. On January 11, 202, Mr. Klayman moved the Defendants to vacate the January 7, 2021 temporary suspension order, which was denied without any factual or legal reasoning, much more findings of fact and conclusions of law. Indeed, he even tried twice to file petition for rehearing en banc to have the January 7, 2021 order reviewed, but was denied the ability to even file such a petition, as the Defendants was directed the Clerk to reject them improperly claiming en banc review only could be invoked over a "final order," rather than a temporary interim suspension order. Comp. ¶ 29. Then on February 8, 2021, he again moved to rescind the temporary suspension order, but was denied once again, without any reasoning. *See* <u>Exhibit 3</u> – Docket Sheet. Thus, Mr. Klayman truly has no legal recourse but to move for injunctive relief in this Court under 42. U.S.C. ¶1983, as he has no other way to challenge the January 7, 2021 order via declaratory relief or for that manner any other vehicle, all of which have been denied to him.

## 2. Courts Have Allowed Claims for Against Judges Under *Bivens* as Well

Mr. Klayman's claims here arise from 42 U.S.C. § 1983, but it is instructive to also compare cases brought under its federal counterpart *Bivens v. Six Unknown Named Agents,* 403 U.S. 388 (1971) ("*Bivens*"). Whereas *Bivens* is used for federal actors, the same fundamental principles are applicable – namely that judges (and other government officials) are not granted immunity for when they violate an individual's constitutional rights, as they have done here.

In *Hagan v. Coggins*, 2000 U.S. Dist. LEXIS 22062 (N.D. Tex. Apr. 26, 2000), the

Honorable Sim Lake of the United States District Court for the Northern District of Texas allowed a *Bivens* claim to proceed against Judge Buchmeyer in the same court, granting the Plaintiff leave to amend instead of dismissing the *Bivens* claims as a matter of law. See also *Trulock v. Freeh*, 275 F.3d 391 (4th Cir. 2001); *Navab-Safavi v. Broadcasting Board of Governors*, 08-cv-1125 (D.D.C).

Thus, even when seeking money damages, which goes far beyond what Mr. Klayman is requesting here, courts have allowed claims to proceed against judges for violations of constitutional and other rights. And, importantly, in this case Mr. Klayman only seeks equitable relief, which unquestionably this Court has jurisdiction over and may order, as there is no applicable judicial immunity.

III.   **CONCLUSION**

For the foregoing compelling reasons, the Court must find that Mr. Klayman's claims are not barred by judicial immunity and thus has jurisdiction to adjudicate this matter expeditiously, as he has a pending Motion for Preliminary Injunction and there is continuing severe harm to his legal practice and his clients. Mr. Klayman has been denied due process and equal protection under the Fourteenth Amendment, First Amendment right to freedom of speech through his public interest and private legal advocacy, as well as Sixth Amendment right to counsel of choice. His clients have also suffered gravely, as they have suddenly and precipitously been left without counsel in the middle of ongoing cases.

Thus, these egregious, large and ongoing harms must be remedied by this Court in accordance with Mr. Klayman's constitutional rights to due process, equal protection, freedom of speech through his public interest and private legal advocacy, and last but not least right to counsel.

Dated: March 3, 2021                    Respectfully submitted,

                                         */s/ Larry Klayman*
                                        Larry Klayman
                                        KLAYMAN LAW GROUP, P.A
                                        7050 W. Palmetto Park Rd
                                        Boca Raton, FL, 33433
                                        Tel: (561)-558-5336
                                        Email: leklayman@gmail.com

                                        Plaintiff Pro  Se

1