## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LARRY KLAYMAN, <br><br> *Plaintiff,* <br><br> v. <br><br> ANNA BLACKBURNE-RIGSBY, *et al.,* <br><br> *Defendants.* | Civil Action No. 21-409 (ABJ) |

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

### INTRODUCTION

The D.C. Board on Professional Responsibility (Board) recommended to the D.C. Court of Appeals (DCCA) that plaintiff Larry Klayman be suspended from practicing law in the District of Columbia for 18 months because of multiple ethical violations, and that he prove his fitness to practice before reinstatement. Because the Board recommended that plaintiff prove his fitness, under Section 9(g) of D.C. Bar Rule XI, the DCCA was required to suspend plaintiff pending resolution of the disciplinary proceeding against him, absent a showing that he has a substantial likelihood of success on the merits. The DCCA concluded that plaintiff had failed to make the required showing and suspended him pending final action on January 7, 2021. The DCCA subsequently rejected plaintiff's constitutional challenges to the interim suspension. Plaintiff now asks this Court to effectively overrule the DCCA's

decisions. Plaintiff's claims should be dismissed with prejudice.

First, defendants have absolute judicial immunity from claims concerning their official acts. Second, this Court should abstain under *Younger v. Harris*, 401 U.S. 37 (1971) from hearing plaintiff's claims against ongoing attorney disciplinary proceedings. Third, plaintiff fails to allege a violation of his due process rights in Claims 1 and 2 because he received notice and a full opportunity to be heard before his license was suspended. Fourth, plaintiff fails to allege a violation of his equal protection rights in Claim 3 because he does not allege that he was treated differently than other similarly situated attorneys. Fifth, plaintiff fails to allege a violation of his First Amendment rights in Claim 4 because the DCCA's power to license attorneys and determine fitness to practice law does not implicate protected speech. Sixth, plaintiff's alleged violation of the Sixth Amendment in Claim 5 should be dismissed because he has failed to allege an injury-in-fact and because no right to counsel exists in civil proceedings. Finally, plaintiff's motion for a preliminary injunction should be denied because he has not established a substantial likelihood of success on the merits, that he will suffer irreparable harm absent an injunction, or that the balance of equities and public interest favor overruling the DCCA's decisions and interfering with attorney disciplinary proceedings.

## BACKGROUND

### I.   <u>Attorney Disciplinary Proceedings in the District</u>

The DCCA is authorized "to make such rules as it deems proper respecting the examination, qualification, and admission of persons to membership in its bar, and

their censure, suspension, and expulsion." D.C. Code § 11-2501(a). To accomplish this, the DCCA established the Board on Professional Responsibility, which has the power and duty to "consider and investigate any alleged ground for discipline ... called to its attention ... ." *See* D.C. Bar R. XI, §§ 4(a), (e). All attorney disciplinary proceedings begin with an investigation into alleged misconduct by Disciplinary Counsel. *Id.* § 8(a). Disciplinary Counsel is appointed by the Board and charged with investigating alleged attorney misconduct and prosecuting all disciplinary proceedings. *Id.* §§ 4(e), 6(a). "Upon conclusion of an investigation, Disciplinary Counsel may ... dismiss the complaint, informally admonish the attorney under investigation, or institute formal charges ... or enter into a diversion agreement." *Id.* § 8(b). To initiate formal disciplinary proceedings, Disciplinary Counsel must file a petition under oath that is "sufficiently clear and specific to inform the attorney of the alleged misconduct." *Id.* § 8(c). The petition is served on the attorney and the Clerk of the Court. *Id.* The attorney then has 20 days to file an answer to the petition. *Id.* § 8(e).

Upon receipt of the petition, a hearing is scheduled and the matter is assigned to a Hearing Committee. *Id.* § 8(c). A Hearing Committee—"consisting of two members of the Bar and one person who is not a lawyer"—has the power and duty to "conduct hearings on formal charges of misconduct" and "submit their findings and recommendations" to the Board. D.C. Bar R. XI, § 5(c). Prior to the hearing, the attorney has "the right to reasonable discovery." *Id.* § 8(g). A prehearing conference is held to "obtain[] admissions or otherwise narrow the issues presented by the pleadings." *Id.* § 8(h). At the hearing, the attorney "ha[s] the right to be represented

3

by counsel, to cross-examine witnesses, and to present evidence in defense or mitigation of the charges." *Id.* § 8(d). After the conclusion of the hearing, the Hearing Committee must "submit to the Board a report containing its findings and recommendation, together with a record of its proceedings and the briefs of the parties." *Id.* § 9(a).

After the Board receives the Hearing Committee report, parties may file exceptions. *Id.* § 9(b). If no exceptions are filed, the Board "decide[s] the matter on the basis of the Hearing Committee record." *Id.* If exceptions are filed, the parties submit additional briefs and the Board holds oral arguments. *Id.* After oral arguments, the Board must "either adopt[] or modif[y] the recommendation of the Hearing Committee, remand the case to the Hearing Committee for further proceedings, direct Disciplinary Counsel to issue an informal admonition, or dismiss the petition." *Id.* § 9(c). If the Board adopts or modifies the recommendation of the Hearing Committee, the Board must produce a report containing its findings and recommendations. *Id.* § 9(d). The Board's report and entire record are then submitted to the DCCA. *Id.*

The discipline proposed by the Board determines whether the attorney is suspended pending his appeal to the DCCA. If the Board recommends "disbarment, suspension requiring proof of fitness as a condition of reinstatement, or suspension of one year or more without a fitness requirement," then the Court "shall order the attorney to show cause within thirty days why the Court should not enter an order of suspension pending final action on the Board's recommendation." *Id.* "To prevent suspension under this subsection, the attorney shall have the burden of

4

demonstrating a substantial likelihood of success with respect to the exceptions the attorney has taken to the Board's report." D.C. Bar R. XI, § 9(g).

If the attorney fails to establish a substantial likelihood of success, then the interim discipline imposed by the DCCA depends on whether "the Board has recommended disbarment or suspension requiring proof of fitness to practice law as a condition of reinstatement." *Id.* If it has, then "the Court *shall* enter an order suspending the attorney from the practice of law in the District of Columbia." *Id.* § 9(g)(2)(a) (emphasis added). "If the Board has recommended suspension of one year or more without requiring proof of fitness as a condition of reinstatement, the Court shall enter an order imposing the discipline recommended by the Board." *Id.* § 9(g)(2)(b). On the merits, the DCCA "shall accept the findings of fact made by the Board unless they are unsupported by substantial evidence of record, and shall adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted." *Id.* § 9(h)(1).

## II.    Plaintiff's Disciplinary Proceeding

In November 2009, plaintiff met Elham Sataki, an Iranian woman who was then working at Voice of America (VOA). Report and Recommendation of the Board on Professional Responsibility, *In the Matter of Larry E. Klayman*, Board Dkt. No. 17-BD-063, at 6 (Oct. 2, 2020) (Board Report).[1] Ms. Sataki informed plaintiff that she

---

[1]     Available at: https://www.dcbar.org/ServeFile/GetDisciplinaryActionFile?fileName=LarryEKlayman17BD063.pdf (last visited Apr. 6, 2021).

had been sexually harassed by a colleague at VOA. *Id.* Plaintiff agreed to represent Ms. Sataki in her sexual harassment case. Board Report at 6. The disciplinary proceeding discussed in plaintiff's Complaint relates to his representation of Ms. Sataki.

On approximately November 2, 2010, Ms. Sataki filed a disciplinary complaint with the D.C. Bar over plaintiff's representation of her. Report and Recommendation of the Ad Hoc Hearing Committee, *In the Matter of Larry E. Klayman*, Board Dkt. No. 17-BD-063, ¶ 84 (July 24, 2019) (Hearing Committee Report).[2] On July 20, 2017, Disciplinary Counsel filed its Specification of Charges against plaintiff based on Ms. Sataki's complaint. Hearing Committee Report at 2.[3] Plaintiff was charged with multiple violations of the D.C. Rules of Professional Conduct, including Rules 1.2(a), 1.4(b), 1.5(b), 1.5(c), 1.6(a)(1), 1.6(a)(3), 1.7(b)(4), 1.16(a)(3), and 8.4(c). *Id.*

The Hearing Committee issued its report on July 24, 2019, unanimously recommending that "the Board conclude that Disciplinary Counsel has established by clear and convincing evidence that Respondent violated one or more of Rules 1.2(a), 1.4(b), 1.5(b), 1.5(c), 1.6(a)(1), 1.6(a)(3), 1.7(b)(4), and 1.16(a)(3) in a total of at least fourteen instances or sets of circumstances." *Id.* at 2. The Hearing Committee found that Disciplinary Counsel did not prove a violation of Rule 8.4(c). *Id.* n.1. As a

---

[2]     Available at:
https://www.dcbar.org/ServeFile/GetDisciplinaryActionFile?fileName=HCLarryEKl
ayman02811.pdf (last visited Apr. 6, 2021).

[3]     Neither the Hearing Committee Report nor the Board Report address the delay between the filing of Ms. Sataki's complaint and the filing of charges.

sanction, the Hearing Committee recommended that plaintiff be suspended from the practice of law for 33 months and that his readmission be conditioned on his establishing that he is fit to resume the practice of law. Hearing Committee Report at 2. The Hearing Committee also discussed in detail the process that was afforded to plaintiff before the Hearing Committee, *id.* at 3, as demonstrated in part by the many submissions that plaintiff made to the Hearing Committee concerning his case, *see id.* at 167–81.

The Board issued its report on October 2, 2020, agreeing with the Hearing Committee that plaintiff had violated Rules 1.2(a), 1.4(b), 1.5(b), 1.5(c), 1.6(a)(1), 1.6(a)(3), 1.7(b)(4), and 1.16(a)(3). Board Report at 3. The Board, however, agreed with plaintiff that a 33-month suspension was not consistent with prior disciplinary cases and recommended an 18-month suspension. *Id.* at 30–31. The Board also required plaintiff to prove his fitness before being reinstated. *Id.* On October 13, plaintiff filed exceptions to the Board's Report with the DCCA. Resp't's Exceptions to the Report and Recommendation of the Board (Oct. 13, 2020) (attached as Ex. 1). Because the Board recommended a suspension of more than 12 months and a proof-of-fitness requirement, Section 9(g) was triggered, and on October 19, the DCCA ordered plaintiff to show cause as to why he should not be suspended pending final resolution. Order to Show Cause (Oct. 19, 2020) (attached as Ex. 2). Plaintiff responded to the show cause order on November 30 and December 7. Resp't's Resp. to Ct.'s Order to Show Cause (Nov. 30, 2020); Resp't's Supplement to Resp. to Ct.'s

Order to Show Cause (Dec. 7, 2020) (attached as Exs. 3 and 4).[4] Plaintiff argued in part that the interim suspension would violate his constitutional rights. *See* November 30 Response to Show Cause Order at 31–32; December 7 Supplement to Response to Show Cause Order at 7–8.

On January 7, 2021, the DCCA suspended plaintiff pending final resolution under Section 9(g). Order Suspending Resp't Pending Final Disposition (Jan. 7, 2021) (January 7 Order) (attached as Ex. 5). Plaintiff moved to vacate the January 7 Order, arguing again that it violated his constitutional rights. Resp't's Emergency Mot. to Vacate Order of January 8, 2021 (Jan. 11, 2021) (attached as Ex. 6). The DCCA denied his motion. Order Den. Mot. to Vacate (Jan. 21, 2021) (attached as Ex. 7). Plaintiff also attempted to petition the DCCA for rehearing *en banc* of the January 7 Order, but his filing was not accepted. Compl. ¶¶ 29–32. Plaintiff filed his opening brief before the DCCA on February 8, 2021, and he again argued that the interim suspension (as well as the proceeding itself) violated his constitutional rights. *See* Initial Br. of Resp't at 22–27 (Feb. 8, 2021) (attached as Ex. 8). The disciplinary proceeding remains pending before the DCCA. *See In re Larry E. Klayman*, Board Dkt. No. 17-BD-063.

---

[4]    Ms. Melissa Isaak was identified in the signature block of plaintiff's November 30 filing as his counsel, *see* Ex. 3, and Ms. Isaak signed plaintiff's December 7 filing, *see* Ex. 4, even though her application to be admitted *pro hac vice* was still pending. DCCA Rule 49 provides that "[a] person may provide legal services in or reasonably related to a pending or potential proceeding in a court of the District of Columbia, if the person has been or reasonably expects to be admitted pro hac vice." DCCA Rule 49(c)(7). Plaintiff does not allege that Ms. Isaak had any reason to expect that her application would not be granted.

III.   <u>This Lawsuit</u>

On February 17, 2021, plaintiff filed this lawsuit against the thirteen judges of the DCCA and the Clerk of the DCCA, Julio Castillo. Compl. [1]. Plaintiff concurrently filed a motion for a preliminary injunction [2]. Plaintiff alleges in the Complaint that the January 7 Order violates his due process rights because it did not include findings of fact and conclusions of law and because he was not permitted to petition for a rehearing *en banc*, Compl. ¶¶ 39–48 (Claims 1 and 2); violates his equal protection rights because it demonstrates bias towards "a Muslim woman of color" over "a Caucasian, white Jewish male," Compl. ¶¶ 49–53 (Claim 3); and violates his First Amendment rights because it "prevents him from engaging in free speech and advocacy as an attorney," *id.* ¶¶ 54–58 (Claim 4). Unrelated to the January 7 Order, plaintiff alleges that the purported delay in approving his counsel's application to be admitted to the DCCA *pro hac vice* violated his right to counsel under the Sixth Amendment. *Id.* ¶¶ 59–63 (Claim 5). Plaintiff requests that the Court declare the January 7 Order unconstitutional and enjoin its enforcement. Compl. at 14.

On February 24, 2021, the Court ordered that plaintiff should show cause as to why his claims are not barred by the doctrine of judicial immunity. Minute Order (Feb. 24, 2021). Plaintiff responded on March 3, 2021 [10]. The Court set April 6, 2021 as defendants' deadline to file a consolidated response to the Complaint and motion for preliminary injunction. Minute Order (Mar. 16, 2021).

## LEGAL STANDARD

### I.   Motion to Dismiss

A case must be dismissed when a party fails to set forth "a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although well pleaded factual allegations must be taken as true, a plaintiff must offer "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see Jackson v. District of Columbia*, 826 F. Supp. 2d 109, 120 (D.D.C. 2011). Courts need not accept as true conclusory "assertions devoid of further factual enhancement," *Iqbal*, 556 U.S. at 679, and "need not … accept inferences drawn by a plaintiff if such inferences are unsupported by the facts set out in the complaint." *Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016) (alterations adopted) (internal quotation marks omitted).

In evaluating a motion under Rule 12(b)(6), the Court "may consider … the facts alleged in the complaint, any documents either attached to or incorporated in the complaint, and matters of which [the Court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997); *Laughlin v. Holder*, 923 F. Supp. 2d 204, 209 (D.D.C. 2013).

## II.   Preliminary Injunction

A preliminary injunction "is 'an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'" *Sherley v. Sebelius*, 644 F.3d 388, 393 (D.C. Cir. 2011) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). "The primary purpose of a preliminary injunction is to preserve the object of the controversy in its then existing condition—to preserve the status quo." *Aamer v. Obama*, 742 F.3d 1023, 1043 (D.C. Cir. 2014) (internal quotation marks omitted). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, *and* that an injunction is in the public interest." *Winter*, 555 U.S. at 20 (emphasis added). The last two factors merge when the government opposes an injunction. *Nken v. Holder*, 556 U.S. 418, 435 (2009). A plaintiff bears the burden of proving all four prongs of the standard before relief can be granted. *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1292 (D.C. Cir. 2009).

## ARGUMENT

## I.   Defendants Have Absolute Judicial Immunity from Plaintiff's Claims for Equitable Relief.

According to plaintiff, he "seeks only injunctive and declaratory relief against Defendants, not monetary damages." Pl.'s Resp. to Show Cause Order at 8. Plaintiff then acknowledges that 42 U.S.C. § 1983 (Section 1983) expressly provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory

decree was violated or declaratory relief was unavailable." *Id.* (quoting Section 1983).[5]

Although plaintiff argues that the ban on injunctive relief under Section 1983 is somehow inapplicable to the District because of the Court's decision in *Smith v. Scalia*, 44 F. Supp. 3d 28 (D.D.C. 2014), *see* Pl.'s Resp. to Show Cause Order at 10, he fails to distinguish between common law and statutory judicial immunity. *See Moten v. Hatch*, Civil Action No. 11-1556, 2011 WL 3847437, at *1 (D.D.C. Aug. 30, 2011) ("Although judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity, *Pulliam v. Allen*, 466 U.S. 522, 541–42 [1984], by statute injunctive relief cannot be granted as to defendants [Judge] Collins and [Judge] Ishii. *See* 42 U.S.C. § 1983.").

---

[5]     In considering judicial immunity as a basis for dismissal, courts have not been consistent in analyzing it under Rule 12(b)(1) or Rule 12(b)(6). *See Morrison v. Walker*, Civil Action No. 13-327, 2014 WL 11543592, at *2 (E.D. Tex. Jan. 2, 2014) ("There is no clear guidance whether this court should decide the motion to dismiss as it relates to judicial immunity under either Rule 12(b)(1) or 12(b)(6). Courts have analyzed motions to dismiss raising judicial immunity under either, and sometimes both."). However, defendants acknowledge that the weight of authority in this Circuit and elsewhere indicates that judicial immunity should be analyzed as a defense under Rule 12(b)(6). *See Morrison v. Walker*, 704 Fed. Appx. 369, 372–73 (5th Cir. 2017) (affirming dismissal of claims under Rule 12(b)(6) on judicial immunity grounds); *Bartolini v. Mongelli*, Civil Action No. 17-6276, 2018 WL 6333827, at *10 (E.D.N.Y. Nov. 7, 2018) ("Judicial immunity bars lawsuits against judges acting in their judicial capacity; the doctrine does not, however, implicate this Court's subject matter jurisdiction."); *cf. Klayman v. Judicial Watch*, Civil Action No. 19-2604, 2021 WL 602900, at *3, *9 (D.D.C. Feb. 16, 2021) (dismissing claims under 28 U.S.C. § 1915(e)(2)(B) in part on judicial immunity grounds without referencing a lack of jurisdiction); *Tsitrin v. Lettow*, 888 F. Supp. 2d 88, 91 (D.D.C. 2012) ("A claim asserted against a federal judge stemming from official judicial acts is subject to dismissal under Rule 12(b)(6) for failure to state a claim upon which relief can be granted."); 5B Arthur R. Miller *et al.*, Fed. Practice and Procedure § 1350 (October 2020) ("The defense of … judicial immunity has … been held to be properly raised via Rule 12(b)(6) rather than Rule 12(b)(1), although one can find courts not being too particular about the distinction."). The same analysis applies under either Rule.

In *Pulliam v. Allen*, as noted in *Smith*, the Supreme Court held that judicial immunity at common law did not prohibit claims for prospective injunctive relief against judges. 466 U.S. 522, 541–42 (1984). But the Supreme Court also explained that it was for Congress to set the contours of judicial immunity, not the courts. *Id.* at 543. ("[I]t is for Congress, not this Court, to determine whether and to what extent to abrogate the judiciary's common law immunity."). Congress did just that in 1996 and expanded judicial immunity to cover all claims for injunctive relief through the Federal Courts Improvement Act (FCIA). *See Moore v. Urguhart*, 899 F.3d 1094, 1104 (9th Cir. 2018) ("Section 1983 (as amended by the FCIA) therefore provides judicial officers immunity from injunctive relief even when the common law would not.").[6] Therefore, because plaintiff does not dispute that defendants were acting in a judicial capacity, the bar against injunctive relief under Section 1983 requires dismissal of plaintiff's claims to the extent they seek injunctive relief.[7]

---

[6]    As one court noted, "[i]t cannot be seriously disputed that, after the FCIA, judicial immunity typically bars claims for prospective injunctive relief against judicial officers acting in their judicial capacity. … The abrogation of *Pulliam* has been widely recognized." *Ray v. Judicial Corr. Servs., Inc.*, Civil Action No. 12-2819, 2014 WL 5090723, at *3 (N.D. Ala. Oct. 9, 2014).

[7]    With regard to defendant Castillo, "[judicial] immunity extends to court clerks who perform 'tasks that are an integral part of the judicial process." *Reddy v. O'Connor*, 520 F. Supp. 2d 124, 130 (D.D.C. 2007); *Sindram v. Suda*, 986 F.2d 1459, 1460 (D.C. Cir. 1993) ("Although this circuit has never addressed the question, we now adopt the holding of numerous other circuits that clerks, like judges, are immune from damage suits for performance of tasks that are an integral part of the judicial process."). Mr. Castillo has immunity from suits for damages as well as injunctive relief. *See Hester v. Dickerson*, 576 F. Supp. 2d 60, 62 (D.D.C. 2008) (denying injunctive relief because "[i]n this Circuit, absolute judicial immunity extends to clerks of the court"). In response to a different lawsuit by Mr. Klayman, the D.C. Circuit recently held that employees of the D.C. Office of Disciplinary Counsel were

After the FCIA, the only claims that can be asserted against judges are claims for prospective declaratory relief. "A declaratory judgment is meant to define the legal rights and obligations of the parties in anticipation of some future conduct, not simply to proclaim liability for a past act." *Justice Network Inc. v. Craighead Cnty.*, 931 F.3d 753, 764 (8th Cir. 2019). "A complaint seeking a declaration of past liability against a judge instead of future rights does not satisfy the definition of declaratory judgment and renders declaratory relief unavailable." *Id.*[8]

Here, plaintiff does not seek an adjudication of claims affecting his *future* rights. He asks this Court to find that the DCCA's *prior* decisions were unconstitutional and to overrule them. If the Court grants plaintiff's requested declaratory relief, it would have the effect of requiring the DCCA to reverse its prior decisions. Judicial immunity protects judges from having to defend the constitutionality of prior decisions in court, and therefore plaintiff's claims should be

---

entitled to judicial immunity from claims for injunctive relief. *Klayman v. Lim*, 830 Fed. Appx. 660, 662–63 (D.C. Cir. 2020).

[8]   *See also Fredin v. Street*, Civil Action No. 19-2864, 2020 WL 1271176, at *4 (D. Minn. Mar. 17, 2020) ("[Plaintiff] seeks an order declaring that the July 26, 2019 HRO, and the past actions of the State Judicial Defendants, violated his constitutional rights. The Court therefore finds that the narrow exception for prospective declaratory relief is inapplicable."); *Davis v. Campbell*, Civil Action No. 13-693, 2014 WL 234722, at *9 (N.D.N.Y. Jan. 22, 2014) ("In this case, plaintiff's request for declaratory relief is purely retrospective. She seeks a declaratory judgment that past actions that occurred in the context of the Family Court proceedings violated her constitutional rights. Although she states her requests for relief in future terms and refers to the judges' actions as policies, essentially, in her first three claims, she is asking the court to invalidate the actions of the [judge].").

dismissed. *See Judicial Network, Inc.*, 931 F.3d at 764 (concluding that judicial immunity applied because plaintiff was seeking only retrospective declaratory relief).

## II.   *Younger* Requires This Court To Abstain From Reviewing the D.C. Court of Appeals' Decisions Concerning Attorney Discipline.

In *Younger v. Harris*, 401 U.S. 37 (1971), the Supreme Court espoused "a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Middlesex Cnty. Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982); *Sprint Communications v. Jacobs*, 571 U.S. 69 (2013) (repeatedly discussing the attorney disciplinary proceeding at issue in *Middlesex* as an example of where *Younger* abstention is appropriate); *Borum v. Brentwood Vill., LLC*, 218 F. Supp. 3d 1, 18 (D.D.C. 2016) ("At its core, *Younger* abstention stems from concerns of comity and federalism and prevents federal courts from enjoining ongoing [judicial proceedings].").[9]

"*Younger* precludes federal adjudication where three criteria are met:  (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings

---

[9]     As with judicial immunity, courts are inconsistent in analyzing *Younger* abstention under Rule 12(b)(1) or Rule 12(b)(6). *See JGB Properties, LLC v. Ironwood, LLC*, Civil Action No. 14-1542, 2015 WL 1399997, at *7 (N.D.N.Y. Mar. 26, 2015) ("Although many courts apply Fed. R. Civ. P. 12(b)(1) when analyzing *Younger* abstention, some find that dismissal based on *Younger* abstention is appropriate under Fed. R. Civ. P. 12(b)(6) rather than Fed. R. Civ. P. 12(b)(1) when it is clear from the face of the complaint that the defense bars the plaintiff's claims as a matter of law."); *CMH Homes, Inc. v. Browning*, Civil Action No. 14-12762, 2015 WL 1276729, at *6 (S.D.W. Va. Mar. 19, 2015) ("Courts have allowed a *Younger* abstention challenge to be raised both in [a] Rule 12(b)(6) motion and in a Rule 12(b)(1) motion.").

In this Circuit, the most recent decisions treat *Younger* as non-jurisdictional. *Borum*, 218 F. Supp. 3d at 13 ("As with Defendants' arguments concerning

implicate important state interests; and (3) the proceedings afford an adequate opportunity to raise the federal claims." *William Penn Apartments*, 39 F. Supp. 3d at 19. As to the third factor, "the burden on this point rests on the federal plaintiff to show that state procedural law barred presentation of its claims." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14 (1987). A plaintiff "need be accorded only an opportunity to fairly pursue their constitutional claims in the ongoing state proceedings." *Juidice v. Vail*, 430 U.S. 327, 337 (1977) ("Here it is abundantly clear that appellees had an opportunity to present their federal claims in the state proceedings. No more is required to invoke *Younger* abstention."). Plaintiff must identify "unambiguous authority" supporting his claim that he cannot pursue his federal claims in state court; otherwise "a federal court should assume that state procedures will afford an adequate remedy." *Pennzoil*, 481 U.S. at 15; *Davis*, 2014 WL 234722, at *7 ("The relevant question is whether the state's procedural remedies could provide the relief sought, not whether they will provide the constitutional ruling that plaintiff seeks. Simply because a state court has not ruled in plaintiff's favor does not render the remedy inadequate for purposes of the abstention doctrine.").[10]

---

exhaustion, *Younger* abstention and Plaintiffs' data interpretation are non-jurisdictional in nature and ask the Court to determine whether Plaintiffs' complaint states a cognizable claim."); *William Penn Apartments v. D.C. Court of Appeals*, 39 F. Supp. 3d 11, 19 (D.D.C. 2014) (analyzing *Younger* abstention in the context of Rule 12(b)(6)).

[10]      *Younger* applies with equal force whether plaintiff seeks injunctive or declaratory relief. *Samuels v. Mackell*, 401 U.S. 66, 72 (1971) ("[T]he propriety of declaratory and injunctive relief should be judged by essentially the same standards. In both situations deeply rooted and long-settled principles of equity have narrowly restricted the scope for federal intervention, and ordinarily a declaratory judgment

Here, *Middlesex* is dispositive on the first two *Younger* factors—the Supreme Court held that attorney disciplinary proceedings constitute ongoing state judicial proceedings that implicate important state interests. 457 U.S. at 432–34; *see also Sprint*, 571 U.S. at 592–93 (reaffirming the continuing validity of *Middlesex*). The third *Younger* factor is also satisfied. Plaintiff has not identified "unambiguous authority" showing that the DCCA "bars" consideration of his federal claims. To the contrary, plaintiff has repeatedly raised his constitutional claims before the DCCA, and the DCCA has rejected them. As was recently held by another court in this District, "the attorney disciplinary proceedings that [Mr. Klayman] seeks to enjoin fall squarely within the scope of the *Younger* doctrine, as explicated in *Sprint Communications* [*v. Jacobs*, 571 U.S. 69 (2013)] and other binding Supreme Court precedents." *Klayman v. Fox*, Civil Action No. 18-1579, 2019 WL 2396538, at *7 (D.D.C. June 5, 2019).

In fact, plaintiff himself recently did not dispute before the D.C. Circuit that *Younger* generally applies to attorney disciplinary proceedings. *Lim*, 830 Fed. Appx. at 662 ("Klayman does not dispute there are ongoing disciplinary proceedings that would ordinarily lead to federal-court abstention, but contends that Disciplinary Counsel acted with sufficient 'bad faith' to make abstention inappropriate in this case."). Instead, plaintiff argued there, as he will presumably argue here, that he has

---

will result in precisely the same interference with and disruption of state proceedings that the longstanding policy limiting injunctions was designed to avoid. … [E]ven if the declaratory judgment is not used as a basis for actually issuing an injunction, the declaratory relief alone has virtually the same practical impact as a formal injunction would.").

made a "showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate." *See Middlesex*, 457 U.S. at 435 (explaining narrow exception to *Younger* abstention).

To the extent plaintiff argues that the "bad faith" exception to *Younger* applies, he plainly cannot satisfy that extraordinarily high standard. "Bad faith" requires "allegations sufficient to show that the prosecution was brought for purposes of harassment or intimidation, without a reasonable expectation of obtaining a valid conviction." *Fox*, 2019 WL 2396538, at *8. Plaintiff must "allege *specific facts* to support an inference of bad faith." *Id.* (emphasis in original). He has not done so. Plaintiff offers nothing more than conclusory assertions. For example, he alleges that the DCCA discriminated against him because he is a white Jewish male and the complainant in the disciplinary matter is a Muslim woman. Compl. ¶ 20. But plaintiff does not allege any "specific facts" to support a claim that the judges are either biased against white Jewish men or biased in favor of Muslim women. Similarly, while plaintiff alleges that the DCCA "prejudged" his case, the specific facts in support of that allegation are his underlying claims. *See, e.g.*, *id.* ¶ 21. Plaintiff's conclusory claims of constitutional violations fall woefully short of establishing that this is one of the extremely rare cases where a federal court should interfere with a state's attorney disciplinary proceeding. Accordingly, this Court should abstain from hearing plaintiff's claims under *Younger*. *See Fox*, 2019 WL 2396538, at *9–*10.

III.   **Plaintiff Is Not Entitled to a Preliminary Injunction.**

As explained above, plaintiff bears the burden of establishing that he is entitled to a preliminary injunction. Plaintiff must show that his claims have a substantial likelihood of success, that he would suffer irreparable harm absent the injunction, that an injunction is in the public interest, and that the balance of equities weigh in favor of granting an injunction. Plaintiff's motion fails on all counts. Not only has plaintiff failed to establish a substantial likelihood of success, but he has failed to even state a claim.

A.   **Plaintiff Is Not Likely To Succeed on the Merits of Any of His Claims.**

Demonstrating a likelihood of success on the merits is a free-standing requirement for a preliminary injunction, *Sherley*, 644 F.3d at 393 (quotation omitted), and "a failure to show a likelihood of success on the merits is alone sufficient to defeat a preliminary-injunction motion," *Smith v. Henderson*, 944 F. Supp. 2d 89, 96 (D.D.C. 2013). The Court need not conclude that plaintiff will lose on the merits, only that he has not met the extraordinary burden of showing a clear entitlement to immediate, extraordinary relief. *Sweis v. U.S. Foreign Claims Settlement Comm'n*, 950 F. Supp. 2d 44, 48 (D.D.C. 2013). Plaintiff must show not merely that success is a "possibility" but that it is "likely." *Winter*, 555 U.S. at 20–22. Here, for the reasons below, plaintiff has not met his burden because he has not demonstrated that success on the merits is a possibility, let alone a likelihood.

1.    **Plaintiff Has Failed To Allege a Violation of His Due Process Rights Because He Was Suspended Only After Notice and an Opportunity to be Heard (Claims 1 and 2).**

Plaintiff contends that the DCCA violated his due process rights "by refusing to provide any legal or factual analysis ... in [its] orders temporarily suspending him while his disciplinary proceeding was taking place, and also by refusing to even consider his petition for rehearing *en banc*."[11] Compl. ¶¶ 42, 47. But these allegations do not establish a due process violation.

Procedural due process is required in attorney discipline cases. *See, e.g.*, *In re Ruffalo*, 390 U.S. 544 (1968); *Partington v. Houck*, 723 F.3d 280, 287–88 (D.C. Cir. 2013). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotation marks omitted). In attorney discipline proceedings, this means "notice should be given to the attorney of the charges made and opportunity afforded him for explanation and defence." *Partington*, 723 F.3d at 288 (quoting *In re Ruffalo*, 390 U.S. at 550). Moreover, administrative agencies, including those handling attorney disciplinary matters, "should be 'free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to

---

[11]    Plaintiff brings two separate due process claims:  one under the Fourteenth Amendment and another under the Fifth Amendment. Compl. ¶¶ 41, 46. The District of Columbia is subject to the requirements of the Fifth Amendment Due Process Clause, which contains an equal protection component that is considered substantially the same as that in the Fourteenth Amendment. *See Fraternal Order of Police v. United States*, 152 F.3d 998, 1002 (D.C. Cir. 1998) ("Equal protection analysis is substantially identical under the Fifth Amendment and the Fourteenth") (subsequent history omitted).

discharge their multitudinous duties.'" *Klein v. Peterson*, 696 F. Supp. 695, 697 (D.D.C. 1988), *aff'd*, 866 F.2d 412 (Fed. Cir. 1989) (quoting *FTC v. Pottsville Broad. Co.*, 309 U.S. 134, 143 (1939)). "[T]he question whether plaintiff was deprived of his right to due process must be answered by an examination of the proceedings conducted against him." *Id.*

The disciplinary procedures created by the DCCA and afforded to plaintiff easily satisfy due process requirements. *See, e.g.*, *Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 546 (1985) ("something less than a full evidentiary hearing is sufficient prior to adverse administrative action"); *id.* (due process requires notice and "[t]he opportunity to present reasons, either in person or in writing, why [the] proposed action should not be taken"). It is clear from plaintiff's own admissions as well as the public record that he received all the process to which he was due. *See* Background. Before an attorney-discipline case arrives at the DCCA, there has been an investigation, a hearing before the Hearing Committee, a report issued by the Hearing Committee, an examination of the record by the Board, a report issued by the Board, and opportunities for the attorney to submit briefs and provide evidence to challenge the charges against him at every stage. *Id.* Prior to DCCA's temporary suspension of an attorney's license, the attorney once again has the opportunity to submit briefs disputing the accuracy of the charges against him. Plaintiff availed himself of all these procedures. *See* Pl.'s Mot. for Prelim. Inj. at 2 (noting that he "filed an extremely detailed response citing in great detail ... substantial evidence to the order to show cause, as well as a supplement, both of which showed why interim discipline was not warranted"). Due

process requires no more. *See Richardson v. D.C. Ct. of Appeals*, 962 F. Supp. 1, 2 (D.D.C. 1997), *aff'd*, No. 97-7085, 1997 WL 811754 (D.C. Cir. 1997) (noting that there was no due process violation in an attorney-discipline proceeding when DCCA did not hold a hearing before temporarily suspending the attorney because the attorney "was given notice" with the opportunity to respond in writing and "[i]t was the opportunity to respond in writing that constituted Plaintiff's due process.").

### a.   Plaintiff Has No Right to a Written Opinion.

In spite of the extensive procedures afforded to plaintiff, he argues that due process requires the DCCA to issue a written opinion in support of its interim suspension order because otherwise he will not "know what he needs to address in his actual briefs." Pl.'s Mot. for Prelim. Inj. at 7. This claim is baseless. Plaintiff's argument that he is not on notice of the claims against him is belied by the hundreds of pages of briefings and exhibits he has filed, and the hundreds of pages of reports and evidence accumulated in this case. *See generally* Pl.'s Mot. for Prelim. Inj. and exhibits; Background; *cf. Zauderer v. Off. of Disciplinary Counsel of Supreme Ct. of Ohio*, 471 U.S. 626, 671–72 (1985) ("Where there is an absence of fair notice as to the reach of the grievance procedure and the precise nature of the charges, so that the attorney is not given a meaningful opportunity to present evidence in his defense, the proceedings violate due process.") (internal citations and quotation marks omitted). Here, plaintiff has had ample opportunity to understand (and respond to) the charges against him.

Tellingly, plaintiff cites no relevant authority for his argument that due process requires a written opinion to accompany the order temporarily suspending his law license. Instead, he cites only Superior Court Rules of Civil Procedure 52(a)(1) and 53(a)(2), which require the court to "state the findings and conclusions" in support of "granting or refusing an interlocutory injunction." Pl.'s Mot. for Prelim. Inj. at 7. Whether these rules would apply to an interim suspension order is of no import; the Superior Court rules are not appliable to the DCCA. *See* Sup. Ct. R. Civ. P. 1 ("These rules govern the procedure in all civil actions and proceedings in the Civil Division of the Superior Court of the District of Columbia ... ."). DCCA Rules recognize that judgment may be rendered without an opinion, and such a practice does not run afoul of the Due Process Clause. *See* DCCA Rule 36(a).

The weight of authority confirms that there is no due process requirement of a written opinion in attorney discipline proceedings. *See, e.g.*, *In re Rose*, 993 P.2d 956, 975 (Cal. 2000) (attorney discipline proceeding) ("[T]he contention that we must issue a written opinion to ensure due process of law has been rejected expressly.") (citing *Giannini v. Real*, 9111 F.2d 354, 357 (9th Cir. 1990)); *Bernklau v. Principi*, 291 F.3d 795, 801 (Fed. Cir. 2002) ("It is well-established that a litigant's right to have all issues fully considered and ruled on by the appellate court does not equate to a right to a full written opinion on every issue raised.") (internal quotation and citation marks omitted). "While it may be desirable in some cases to afford each issue a complete written discussion, no statute or rule compels such an approach by the [court] (or indeed, any other court)." *Id.* (citing *Furman v. United States*, 720 F.2d

263, 264 (2nd Cir. 1983)); *Hartman v. Nicholson*, 483 F.3d 1311, 1315 (Fed. Cir. 2007) ("A litigant's right to have all issues fully considered and ruled on by the appellate court does not equate to a right to a full written opinion on every issue raised.") (citations omitted). Thus, plaintiff has not been deprived of his due process right to notice of the charges against him.

### b.    Plaintiff Has No Right to a Rehearing *En Banc*.

In addition to his due process complaint regarding an alleged lack of notice, plaintiff makes a similarly baseless argument regarding his opportunity to be heard. Namely, plaintiff complains—without citation to any authority—that the denial of the petition for a rehearing *en banc* amounts to a due process violation. Pl.'s Mot. for Prelim. Inj. at 4. But this argument is without merit because no one is entitled to be heard in a rehearing *en banc*. Appellate courts enjoy wide latitude when determining when to grant a rehearing *en banc*. *See W. Pac. R. Corp. v. W. Pac. R. Co.*, 345 U.S. 247, 259 (1953) ("each Court of Appeals is vested with a wide latitude of discretion to decide for itself just how [the] power [to hold a rehearing *en banc*] shall be exercised"). And the DCCA Rules provide that an "*en banc* hearing or rehearing is not favored and ordinarily will not be ordered unless: (1) *en banc* consideration is necessary to secure or maintain uniformity of the court's decisions; or (2) the proceeding involves a question of exceptional importance." DCCA Rule 35. Plaintiff does not argue that such exceptional circumstances are present here. Nor could he. The DCCA's decision not to hold a rehearing *en banc* is an appropriate exercise of the court's discretion, and plaintiff cannot plausibly claim that he is entitled to such a rehearing.

Given courts' power and discretion to determine whether to rehear a case, it follows that there can be no procedural due process right to a rehearing *en banc*. Indeed, it is well-established that the Due Process Clause confers no right to a rehearing. *See Ohio ex rel. Bryant v. Akron Metro. Park Dist.*, 281 U.S. 74, 80 (1930) (holding that "the right of appeal is not essential to due process, provided that due process has already been accorded in the tribunal of first instance"); *Pittsburgh, C.C. & St. L. Ry. Co. v. Backus,* 154 U.S. 421, 426 (1894) ("Rehearings ... are not essential to due process of law, either in judicial or administrative proceedings."); *Mining Energy, Inc. v. Dir., Off. Of Workers' Comp. Programs*, 391 F.3d 571, 576 (4th Cir. 2004) ("It is well-established that the due process clause, alone, guarantees no right to appellate review."). As described above, *see* Background, plaintiff has had ample, meaningful opportunities to be heard in every stage of the disciplinary proceedings—including submitting briefs throughout the disciplinary process, participating at hearings, and cross-examining witnesses—and plaintiff has not stated a plausible claim to the contrary. Thus, plaintiff has not been denied any due process by the DCCA's denial of his petition for a rehearing, and his Fifth Amendment claim cannot succeed.

> ### 2.    Plaintiff Has Failed To Allege a Violation of His Equal Protection Rights Because He Has Not Alleged That the DCCA Treated Him Differently Than Other Lawyers (Claim 3).

Plaintiff claims that the DCCA's imposition of an interim suspension constitutes a violation of the Equal Protection Clause. Pl.'s Mot. for Prelim. Inj. at 8. He alleges that, in imposing the suspension, "[d]efendants engaged in discriminatory

and unconstitutional behavior against [him] due to his status as a Caucasian, white Jewish male, as opposed to the complainant who is a Muslim woman of color." Compl. ¶ 52. To the extent plaintiff presents any argument in support of his equal protection claim, he appears to plead selective prosecution; in other words, plaintiff does not challenge the disciplinary procedure rules themselves; instead, he only contends that the rules are unjustly applied to him. *See* Pl.'s Mot. for Prelim. Inj. at 8. But plaintiff fails to identify any facts that could establish the necessary components of a selective prosecution claim under the Equal Protection Clause.

Under the Equal Protection Clause of the Fourteenth Amendment—applicable to the District through the Fifth Amendment, *Women Prisoners of the D.C. Dep't of Corr. v. District of Columbia*, 93 F.3d 910, 924 (D.C. Cir. 1996)—a State cannot "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.14. It "requires States"—including the District—"to treat similarly situated persons alike." *Women Prisoners*, 93 F.3d at 924. To succeed in a selective prosecution claim, plaintiff must show (1) he was "was singled out for prosecution from among others similarly situated and (2) that [the] prosecution was improperly motivated, *i.e.*, based on race, religion or another arbitrary classification." *Branch Ministries v. Rossotti*, 211 F.3d 137, 144 (D.C. Cir. 2000) (quoting *United States v. Wash.*, 705 F.2d 489, 494 (D.C. Cir. 1983)). "This burden is a demanding one because 'in the absence of clear evidence to the contrary, courts presume that [government prosecutors] have properly discharged their official duties.'" *Id.* (citing *United States v. Armstrong*, 517 U.S. 456, 464 (1996)) (alteration in original).

26

Plaintiff fails to satisfy the first prong of the selective prosecution standard because he has not plausibly alleged "that the government intentionally treated [him] differently from others who were similarly situated." *BEG Invs., LLC v. Alberti*, 85 F. Supp. 3d 13, 34 (D.D.C. 2015). He suggests that his treatment should be compared to the treatment of Ms. Sataki, *see* Pl.'s Mot. for Prelim. Inj. at 8, but the two individuals are not similarly situated; namely, Ms. Sataki is not an attorney involved in a disciplinary proceeding. *See United States v. Bell*, 506 F.2d 207, 221–22 (D.C. Cir. 1974) ("That different persons receive different treatment at the hand of Government does not, without more, demonstrate constitutional inequality."). Plaintiff has identified no other attorney in a similar position who has avoided a temporary suspension under Section 9(g) of D.C. Bar Rule XI. Such an omission is fatal to his Equal Protection Clause claim. *See BEG Invs., LLC*, 85 F. Supp. 3d at 33 (finding plaintiff failed to state a claim under the Equal Protection Clause when the complaint failed to provide any factual allegations suggesting other businesses were similarly situated); *Mpras v. District of Columbia*, 74 F. Supp. 3d 265, 271 (D.D.C. 2014) (finding plaintiff's conclusory allegations of being treated differently from those "similarly situated" were insufficient to state an equal protection clause claim because the complaint did not allege any supporting facts "about who these other persons are or how they were similarly situated").

Even if plaintiff could show that the DCCA suspended his license while not suspending the license of other similarly situated attorneys, plaintiff still could not satisfy the second prong of the selective prosecution standard because he has not pled

any facts that support a finding of discriminatory purpose. In support of his claims of discrimination, he offers only the irrelevant and conclusory allegation that "in today's world, white males are often at a huge 'disadvantage' ... particularly with regard to women of color." Pl.'s Mot. for Prelim. Inj. at 8. But he has provided no evidence that the alleged disparate treatment was based on plaintiff's race, religion, or gender, let alone the "clear evidence" of impropriety that is that required to state a claim of selective prosecution. *See Branch Ministries*, 211 F.3d at 144. As a result, "[s]ince [p]laintiff[] do[es] not even allege intentional discrimination, [his] equal-protection claim must be dismissed." *Porter v. U.S. Capitol Police Bd.*, 816 F. Supp. 2d 1, 6 (D.D.C. 2011).

3.   **Plaintiff Has Failed To Allege a Violation of His First Amendment Rights Because He Has Not Identified Any Restriction of His Speech (Claim 4).**

The First Amendment prohibits the enactment of laws "abridging the freedom of speech." U.S. Const. amend. I. Under the free speech clause, the government "has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Police Dep't of Chicago v. Mosley*, 408 U.S. 92, 95 (1972). But "restrictions on protected expression are distinct from restrictions on economic activity, or more generally, on nonexpressive conduct." *Sorrell v. IMS Health, Inc.*, 564 U.S. 552, 567 (2011). As such, it is beyond dispute that the police power of the government includes the ability to protect the safety and welfare of its residents by regulating who can and cannot practice certain professions, such as law or medicine. *See Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 460 (1978) ("[T]he State bears a

28

special responsibility for maintaining standards among members of the licensed professions."); *Watson v. State of Maryland*, 218 U.S. 173, 176 (1910) (explaining that it is "too well settled to require discussion" that "the police power of the states extends to the regulation of certain trades and callings, particularly those which closely concern the public health"); *Dent v. West Virginia*, 129 U.S. 114, 122 (1889) ("[I]t has been the practice of different states, from time immemorial, to exact in many pursuits a certain degree of skill and learning upon which the community may confidently rely."). "Generally, the government may license and regulate those who would provide services to their clients for compensation without running afoul of the First Amendment." *NAAMJP v. Howell*, 851 F.3d 12, 19 (D.C. Cir. 2017).

Plaintiff alleges that the interim suspension of his law license "prevents him from engaging in free speech and advocacy as an attorney, both in a public interest capacity and as a private petitioner." Compl. ¶ 57. But plaintiff wrongly assumes that the suspension order targets his speech as opposed to his conduct, *i.e.*, his fitness to practice law.

Here, plaintiff has failed to identify any aspect of the disciplinary proceeding that affects his speech as opposed to his conduct—he is suspended from the *practice* of law, a conclusion entirely consistent with the Supreme Court's analysis in *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833 (1992). At issue in *Casey* was a Pennsylvania law that required doctors to obtain informed consent before performing an abortion; the doctors argued that the requirement violated their First Amendment rights. *Casey*, 505 U.S. at 884. The Supreme Court rejected that

argument because the law did not regulate doctors' speech, but instead regulated their *conduct*—namely, their practice of medicine. *Id.* The Supreme Court explained that "[t]o be sure, the physician's First Amendment rights not to speak are implicated, but only as part of the practice of medicine, subject to reasonable licensing and regulation by the State." *Id.* (citations omitted). So too here. The DCCA's suspension of plaintiff is based on his fitness to practice law, not his speech. Therefore, to the extent plaintiff is challenging the rule requiring his suspension on First Amendment grounds, the rule only has to survive rational basis review, which it does. Even assuming that the suspension has an incidental burden on plaintiff's speech, the rule would be subject to intermediate scrutiny, *see Edwards v. District of Columbia*, 755 F.3d 996, 1001 (D.C. Cir. 2014), which it also survives.

If, however, plaintiff merely complains of the application of the disciplinary procedure rules to him, his First Amendment claim still should be dismissed. Such a claim of selective enforcement is more appropriately analyzed in an Equal Protection Clause framework. *See Henderson v. Kennedy*, 253 F.3d 12, 17–18 (D.C. Cir. 2001) (finding plaintiffs' claim that the government "has not applied its regulations equally" is "one of selective enforcement" under Equal Protection Clause). "The D.C. Circuit has explained that selective-enforcement claims are properly analyzed under the Equal Protection Clause, not the First Amendment, even if a plaintiff alleges that the selective enforcement occurred because the government sought to prevent the exercise of her free-speech rights." *Frederick Douglass Found., Inc. v. District of Columbia*, Civil Action No. 20-3346, 2021 WL 1166841, at *5 (D.D.C. Mar. 26, 2021)

(citing *Sanjour v. EPA*, 56 F.3d 85, 92 n.9 (D.C. Cir. 1995)). And, for the reasons described above, *see* Section II.A.2, plaintiff's selective enforcement claim cannot succeed.

> **4.     Plaintiff Has Failed To Allege a Violation of His Sixth Amendment Rights Because He Has Not Alleged an Injury-In-Fact and Because the Sixth Amendment Does Not Apply to Civil Cases (Count 5).**

Plaintiff alleges that he was "deprived of his right to be represented by [an attorney of his choice]" because the DCCA granted his counsel's *pro hac vice* application approximately nine weeks after the motion was submitted. Compl. ¶¶ 34, 63. Even assuming that plaintiff had a right to counsel (as explained below, he does not), he has failed to establish his standing to bring such a claim. To satisfy Article III's standing requirement, plaintiff must allege that he has suffered an injury-in-fact. *Lujan v. Defs. of Wildlife*, 504 U.S. 560–61 (1992) ("[A]n 'injury in fact' [is] an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical.") (internal quotation marks and citations omitted). But plaintiff's purported injury arises from his allegation that Ms. Isaak could not and did not represent him during the time it took the DCCA to grant his counsel's *pro hac vice* application. *See* Pl.'s Mot. for Prelim. Inj. at 5. Plaintiff is wrong on the facts and the law.

First, plaintiff incorrectly suggests that Ms. Isaak was not involved in his case until after the DCCA issued the January 7 Order. But that claim is belied by the fact that Ms. Isaak was identified as his counsel—noting "*pro hac vice* pending"—on his November 30, 2020 response to the show cause order. *See* Ex. 3 (Resp't's Resp. to Ct.'s

Order to Show Cause). And, further, Ms. Isaak *signed* plaintiff's December 7, 2020 supplement to his response to the show cause order as his counsel. *See* Ex. 4 (Resp't's Supplement to Resp. to Ct.'s Order to Show Cause). Not only has plaintiff failed to allege any facts showing how he was injured in connection with the DCCA's handling of Ms. Isaak's *pro hac vice* application, but plaintiff's own actions contradict his claim that he was deprived of Ms. Isaak's legal services prior to the January 7 Order.

Second, plaintiff wrongly suggests that the DCCA prohibited Ms. Isaak from providing legal services to him prior to approval of her *pro hac vice* application. DCCA Rules do not require that counsel's *pro hac vice* application be granted prior to representation; counsel merely needs to "reasonably expect[]" that the application will be granted. DCCA Rule 49(c)(7). Therefore, unless Ms. Isaak had a reason to expect that her application would not be granted, it was entirely appropriate for her to represent plaintiff while her application was pending (as it appears she did).

Even assuming plaintiff has alleged an injury, he still cannot establish a Sixth Amendment violation because "the Sixth Amendment does not govern civil cases." *Turner v. Rogers*, 564 U.S. 431, 441 (2011). Thus, "there is in a civil case no constitutional right to counsel." *Koller By & Through Koller v. Richardson-Merrell Inc.*, 737 F.2d 1038, 1052 (D.C. Cir. 1984) *vacated sub nom. on other grounds by Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424 (1985); *see Beaulieu v. Barr*, Civil Action No. 15-896, 2019 WL 5579968, at *6 (D.D.C. Oct. 29, 2019) (dismissing plaintiff's claim "that Defendants violated her Sixth Amendment right to counsel by

making it hard for her to find a lawyer" because no such right exists in civil cases). As a result, plaintiff's Sixth Amendment claim should be dismissed.

**B.**   **Plaintiff Will Not Suffer Irreparable Harm Absent Relief Because He Has Not Suffered an Injury.**

The D.C. Circuit has held that "failure to demonstrate irreparable harm is 'grounds for refusing to issue a preliminary injunction, even if the other three factors entering the [preliminary injunction] calculus merit such relief.'" *Nat'l Min. Ass'n v. Jackson*, 768 F. Supp. 2d 34, 50 (D.D.C. 2011) (internal citation and quotation marks omitted). Although the factors relevant to a preliminary injunction "interrelate on a sliding scale … the movant must, at a minimum, demonstrate that irreparable injury is likely in the absence of an injunction." *Bill Barrett Corp. v. U.S. Dep't of Interior*, 601 F. Supp. 2d 331, 334–35 (D.D.C. 2009) (internal quotation marks and citations omitted) (emphasis in original).[12] "[P]roving irreparable injury is a considerable burden, requiring proof that the movant's injury is certain, great and actual—not theoretical—and imminent, creating a clear and present need for extraordinary equitable relief to prevent harm." *Power Mobility Coal. v. Leavitt*, 404 F. Supp. 2d 190, 204 (D.D.C. 2005) (internal citations and quotation marks omitted). If a party fails to make a sufficient showing of irreparable injury, a court may deny a motion

---

[12]   The D.C. Circuit has not "decide[d] whether the 'sliding scale' approach remains valid after *Winter*." *Archdiocese of Wash. v. Wash. Metro. Area Transit Auth.*, 897 F.3d 314, 334 (D.C. Cir. 2018).

for preliminary relief without considering the other factors. *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995).

Here, plaintiff has not made a sufficient showing of an injury to satisfy the irreparable harm prong. Though plaintiff notes that the "loss of constitutional freedoms, for even minimal periods of time" is sufficient to show irreparable harm, *see* Pl.'s Mot. for Prelim. Inj. at 8 (quoting *Mills v. District of Columbia*, 571 F.3d 1304, 1312 (D.C. Cir. 2009)), mere "possibility" of a constitutional harm is not sufficient to satisfy a plaintiff's burden of showing that irreparable harm would occur absent a preliminary injunction, *Winter*, 555 U.S. at 21. Indeed, "plaintiffs seeking preliminary relief [must] demonstrate that irreparable injury is *likely* in the absence of an injunction." *Id.* at 22 (emphasis added). Plaintiff has not met this burden. As discussed above, plaintiff has not shown he is likely to succeed on his claims under the First, Fifth or Sixth Amendments. Thus, plaintiff fails to identify any harm that results from the DCCA enforcing its ability to temporarily suspend plaintiff's law license pending a final outcome of his disciplinary proceeding.

### C.   The Balance of the Equities and the Public Interest Weigh in Favor of Defendants.

Even if a movant demonstrates a likelihood of success and irreparable injury, the Court still must balance the equities between the parties and consider the public interest. *Open Tech. Fund v. Pack*, 470 F. Supp. 3d 8, 31 (D.D.C. 2020). Those two factors "merge when the Government is the opposing party." *Nken*, 556 U.S. at 435.

Although plaintiff argues that he is suffering from the deprivation of various constitutional rights by temporarily not being allowed to practice law in the District,

he does not have an unrestricted right to practice the law whenever and wherever he so pleases. *NAAMJP*, 180 F. Supp. 3d at 60–61 ("A lawyer does not have a protected right to practice law in a particular court without satisfying that court's requirements for admission"); *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1066 (1991) ("Membership in the bar is a privilege burdened with conditions") (internal quotation marks omitted). Plaintiff's interest in relief is minimal, given the temporary nature of the suspension and the extensive procedures he was afforded leading up to the interim suspension order.

Defendants, on the other hand, have a substantial interest at stake here. "The interest in regulating lawyers is 'especially great' because lawyers are essential to the primary governmental function of administering justice, and have historically been officers of the courts." *NAAMJP*, 180 F. Supp. 3d at 60 (quoting *Ohralik*, 436 U.S. at 460 (1978)). Indeed, "[s]ince the founding of the Republic, the licensing and regulation of lawyers has been left exclusively to the States and the District of Columbia within their respective jurisdictions. ... They also are responsible for the discipline of lawyers." *Leis v. Flynt*, 439 U.S. 438, 442 (1979). The DCCA imposed an interim suspension on plaintiff's law license in accordance with the rules and procedures it deemed proper for disciplining attorneys, and the DCCA has a significant interest in maintaining those procedures. *See* D.C. Code § 11-2501(a).

Moreover, there is a strong interest in protecting the public from an attorney who has repeatedly been found to violate the Rules of Professional Conduct. *See In re Ruffalo*, 390 U.S. at 550 (noting that disbarment is "designed to protect the public").

Appropriately, the requirement that the DCCA order suspension of an attorney's license is only triggered after extensive findings throughout the disciplinary process and only for those attorneys whose violations are sufficiently serious to warrant a recommended sanction of disbarment or proof of fitness requirement. *See* D.C. Bar R. XI, § 9(g). In those circumstances, defendants have a significant interest in ensuring that members of the public are not subject to the behavior the attorney exhibited to trigger the disciplinary action. Such is the case here. As discussed above, *see* Background, the Board's findings are grave—including eight violations of the Rules of Professional Conduct—and the sanction recommended for plaintiff is proportional to the gravity of plaintiff's violations. Thus, defendants' interest in temporarily suspending plaintiff's law license far outweighs any harm to plaintiff.

## IV.   Defendants Are Entitled to Dismissal on All Claims.

For the reasons discussed above, plaintiff's claims are meritless, and he is not entitled to any relief. Plaintiff not only fails to satisfy the standard for obtaining a preliminary injunction, he also fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). Even if the Court accepts as true plaintiff's factual allegations, plaintiff has not plead sufficient facts to "allow[] the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). Here, as discussed above, plaintiff fails to provide any plausible allegations that could support his claims under the First, Fifth and Sixth Amendments—let alone present any specific, non-conclusory allegations against the individual defendants. *See Iqbal*, 556 U.S. at 678

(plaintiffs raising the "sheer possibility that a defendant has acted unlawfully" is not sufficient to survive a motion to dismiss). Thus, plaintiff fails to state a claim for relief, and defendants are entitled to dismissal on all claims in the Complaint.

## CONCLUSION

For the foregoing reasons, the Court should deny plaintiff's motion for preliminary injunction and grant defendants' motion to dismiss plaintiff's Complaint with prejudice.

Dated: April 6, 2021.    Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

*/s/ Fernando Amarillas*
FERNANDO AMARILLAS [974858]
Acting Deputy Attorney General
Public Interest Division

*/s/ Richard P. Sobiecki*
RICHARD SOBIECKI [500163]
PAMELA DISNEY [1601225]
Assistant Attorneys General
Equity Section
400 Sixth Street, N.W., Suite 10100
Washington, D.C.  20001
(202) 805-7512
richard.sobiecki@dc.gov
pamela.disney@dc.gov

*Counsel for Defendants*