# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

LARRY KLAYMAN

                Plaintiff,

v.

HON. ANNA BLACKBURNE-RIGSBY, et al

          Defendants.

**CASE NO: 21-cv-409**

**ORAL ARGUMENT REQUESTED**

---

## PLAINTIFF LARRY KLAYMAN'S REPLY TO OPPOSITION TO MOTION FOR AN EVIDENTIARY HEARING UNDER FEDERAL RULE OF CIVIL PROCEDURE 65 AND DISCOVERY

Mr. Klayman respectfully requests an evidentiary hearing pursuant to Rule 65 of the Federal Rules of Civil Procedure, along with an order granting discovery prior to the evidentiary hearing. These are both necessary and essential in order to ensure that Mr. Klayman's due process and other rights are protected, and nothing set forth in Defendants' opposition changes this.

As set forth previously, the right to an evidentiary hearing in a preliminary injunction action is well established. In *Cobell v. Norton*, 391 F.3d 251 (D.C. Cir. 2004), for example, the appellants, the Secretary of Interior and the Acting Assistant Secretary of the Interior, challenged the preliminary injunction entered by the lower court for appellees. *Id*. at 253. There, appellees sought a disconnection of substantially all of the Department of the Interior's computer systems from the Internet and required the Secretary to submit a plan for a secure reconnection. *Id*. The

1

U.S. Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") held that "when a court must make credibility determinations to resolve key factual disputes in favor of the moving party, it is an abuse of discretion for the court to settle the question on the basis of documents alone, without an evidentiary hearing." *Id*. at 261. The D.C. Circuit vacated the injunction because the district court erred when it failed to hold an evidentiary hearing prior to entering the injunction. *Id*. at 261-62.

Similarly, in *Manzanita Band of the Kumeyaay Nation v. Wolf*, 2020 U.S. Dist. LEXIS 192507, where the plaintiffs attempted to halt construction of two barrier projects along the U.S.-Mexico border in California, the Court found that "if there are genuine issues of material fact raised in opposition to a motion for preliminary injunction, an evidentiary hearing *is required*." *Id*. at *9 (emphasis added); *see also Page Communications Engineers, Inc. v. Froehlke***,** 475 F.2d 994 (D.C. Cir. 1973); *DSE, Inc. v. United States*, 169 F.3d 21 (D.C. Cir. 1999); *NOW v. Operation Rescue*, 747 F. Supp. 772 (D.D.C. 1990).

In *Montes v. Janitorial Partners, Inc*., 859 F.3d 1079 (D.C. Cir. 2017), an employee filed suit against his employer, a janitorial service company, for wage underpayment and for failing to pay overtime. *Id*. at 1081. The defendants failed to answer the complaint and the district court entered a default judgment and awarded attorneys' fees. *Id*. at 1081-82. The defendants finally made an appearance and moved to vacate the judgment, arguing that, *inter alia*, they were not properly served because the district court lacked personal jurisdiction of them. *Id*. at 1082. The district court rejected the defendants' defense without a hearing. *Id*. On appeal, the D.C. Circuit held:

> Although a district court "[t]ypically . . . enjoys broad discretion in managing its docket[,]" *Grimes v. District of Columbia,* 794 F.3d 83, 90 417 U.S. App. D.C. 241 (D.C. Cir. 2015) that discretion is not limitless. And in some circumstances, **failure to hold an evidentiary hearing constitutes an abuse of discretion**. *E.g.,Cobell v. Norton,* 391 F.3d 251, 261-62, 364 U.S. App. D.C. 2 (D.C. Cir. 2004). **As we long ago explained, a district court "cannot rest its decision simply on the paper record" if a factual dispute's resolution turns on the parties' credibility**. *Prakash v. Am. Univ.*, 727 F.2d 1174, 1180 234 U.S. App. D.C. 75 (D.C. Cir. 1984). It must instead hold a hearing to assess credibility. *Id.*

*Id*. at 1084 (emphasis added).

As set forth in Mr. Klayman's original motion, there are numerous factual issues that must be resolved before the Court can fairly and fully adjudicate Plaintiff's motion for preliminary injunctive relief.

An issue of primary importance – which underscores the need for discovery – is the factual determination of what, if anything at all, based on Plaintiff's submissions and the record of the disciplinary proceeding, Defendants and their clerks and judicial assistants reviewed before imposing the temporary suspension on Mr. Klayman. To take discovery, not every judge at issue need to be deposed, as Defendants represent. And judges, much less their clerks, are not above having to answer questions, no more than lawyers and others are. The lack of a good-faith review is evidenced by the fact that Mr. Klayman submitted a nearly 500-page response to Defendants' show cause order – on the record in this case as ECF No. 21-2 – that meticulously showed with substantial evidence that the Board on Professional Responsibility's Report and Recommendation was not based on the legal standard, which is "clear and convincing evidence," to find ethical violations under the District of Columbia Rules of Professional Conduct and also why temporary discipline, without due process in particular was wholly unwarranted. Tellingly,

Defendants, in issuing the temporary suspension without any factual and legal explanation, did not provide any findings of fact or conclusions of law. Comp. ¶ 26. This raises a strong inference, if not presumption, that Mr. Klayman's submissions were entirely ignored – a violation of his due process rights under the Fifth and Fourteenth Amendments of the U.S. Constitution.

Nor, as Defendants' counsel argues, is discovery precluded before the disposition of a motion to dismiss, particularly when the motion to dismiss hinges on factual as well as legal issues. In fact, the opposite is true. Defendants' counsel has misstated accepted litigation practice, which is well-known and obvious to anyone who makes a living as a litigator and trial lawyer. Courts do not and cannot decide motions to dismiss such as filed by Defendants in a factual vacuum.

Contrary to Defendants' assertions, this is not Mr. Klayman simply being dissatisfied with Defendants' decision. Indeed, had Defendants shown that they had actually digested Mr. Klayman's submissions by providing him with some form of legal or factual reasoning, it would be a much different story. However, Defendants have steadfastly refused to do so, evidencing the fact that they simply have ignored Mr. Klayman's submissions. This is a clear violation of Mr. Klayman's due process rights. At a minimum, there is a clear factual dispute as to whether Defendants reviewed any of Mr. Klayman's submissions, which again, necessitates an evidentiary hearing.

Lastly, and again, Defendants' apparent argument that they should be excused from having to participate in an evidentiary hearing simply because they are judicial officers must be rejected summarily. Defendants are, simply put, not above the law—despite their assertions to the contrary. This type of thinking by Defendants is what necessitated this action in the first

4

place. Mr. Klayman's due process and other rights are just as important as Defendants'.

Furthermore, the balance of interests – a factor the Court must consider in ruling on Plaintiff Klayman's motion for preliminary injunction – invokes factual issues that must be resolved. As just one example, Mr. Klayman will proffer testimony from clients and potential clients to show the irreparable harm that he has suffered as a result of Defendants' actions, which will buttress the presumption of harm which flows from violations of the Constitution under the Fifth, Fourteenth and First Amendments, which here are implicated, as previously briefed. Defendants assert that Mr. Klayman can simply address this issue on paper. However, nothing matches the impact of having live testimony, which is perhaps why Defendants are so opposed to it. Live testimony will allow for the Court to effectively judge demeanor and credibility, both of which are crucial in an evidentiary hearing. Thus, it is not a "waste of resources," as Defendants' disingenuously assert.

Mr. Klayman will also require discovery and an evidentiary hearing to resolve his claim under the Sixth Amendment for denial of the right to counsel of choice, as Melissa Isaak, Esq., was denied the ability to represent him for months by Defendants – and completely frozen out of the temporary relief stage --  with no explanation. Tellingly, Ms. Isaak's *pro hac vice* application was only granted after Defendants had already issued the temporary suspension, and incredibly with only a few days before Mr. Klayman's initial brief was due for the final phase of the appeal. There are also factual issues that must be developed with regard to this claim, such as who was involved in the processing and approval of Ms. Isaak's application, and why Mr. Klayman was denied his Sixth Amendment right to be represented during the temporary relief phase and up to the point of having to file an initial brief in the final phase of the case. Testimony from the

individuals who processed Ms. Isaak's application is, in fact, necessary to determine whether there was an intentional Sixth Amendment violation. Testimony will show why Ms. Isaak's application was so delayed, and whether such a delay was as a result of negligence and incompetence or whether there was something going on "behind the scenes" in the form of a deliberate Sixth Amendment violation.

Lastly, with regard to discovery, as admitted by the Defendants, the fact that there is a pending preliminary injunction motion weights in favor of granting discovery. *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 98 (D.D.C. 2014). With regard to the specific discovery requests, Mr. Klayman is amenable to working with the Court and the Defendants to ensure that any such requests could not possibly be construed as overly broad or burdensome, and are narrowly tailored to the issues at hand. This will alleviate any possible concerns by the Court or Defendants. In short, Mr. Klayman will be respectful at all times to get to the truth of the matter, which is necessary for this honorable Court to expeditiously adjudicate his claims, which if left undecided and without legal recourse will continue to severely harm him, his colleagues and last but hardly least the well-being and financial stability of his family.

Based on the foregoing, Mr. Klayman respectfully requests that his motion be granted and that discovery and an evidentiary hearing, which can be limited in scope, be held at the earliest practicable date, before more unnecessary damage is done. Time is of the essence as Defendants continue to deny Mr. Klayman, without due process, his right to practice law, which is his hard earned  profession, before District of Columbia Courts. He has thus far been deemed "guilty" before being allowed to prove his "innocence." This egregiously  runs counter to the due process and equal protection rights accorded to him by  the Constitution, the law in general,  or

fundamental fairness, which are the cornerstones of our legal system.

Dated: June 4, 2021                          Respectfully submitted,

                                              */s/ Larry Klayman*
                                             Larry Klayman
                                             KLAYMAN LAW GROUP, P.A
                                             7050 W. Palmetto Park Rd
                                             Boca Raton, FL, 33433
                                             Tel: (561)-558-5336
                                             Email: leklayman@gmail.com

                                             Plaintiff *Pro Se*


<u>**CERTIFICATE OF SERVICE**</u>

I, Larry Klayman, hereby certify that on this day, June 4, 2021, a copy of the foregoing

was filed via this Court's e-filing system and served upon all parties and/or counsel of record

through Notices of Electronic Filing.


                                              */s/ Larry Klayman*
                                             Larry Klayman